UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 19-CR-104(3) (JNE/TNL)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | PLEA AGREEMENT AND |
| ) | SENTENCING STIPULATIONS |
| v. ) | |
| ) | |
| MASON PAUL STUHLDREHER, ) | |
| ) | |
| Defendant. ) | |

The United States of America and Mason Paul Stuhldreher ("Defendant") agree to resolve this case on the terms and conditions that follow. This Plea Agreement binds only Defendant and the United States Attorney's Office for the District of Minnesota. This Agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges.** Defendant agrees to plead guilty to Count 1 of the Superseding Indictment. Count 1 charges Defendant with conspiracy to distribute methamphetamine, a controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A) and 846. As part of this Plea Agreement, and in consideration for his plea, the Government agrees it will not seek a Second Superseding Indictment or otherwise pursue charging Defendant with additional allegations resulting from its present case or investigation. The United States also agrees to dismiss the remaining allegations (as to Defendant) at sentencing.



2. **Factual Basis.** Defendant agrees to the following facts and further agrees that, were this matter to go to trial, the United States would prove the following facts beyond a reasonable doubt.

a. From at least as early as December 2018, and continuing through February 2019, Defendant was a part of an agreement with others in the State and District of Minnesota, and elsewhere, to distribute methamphetamine. This agreement to distribute included his named co-defendants and others. Defendant obtained and delivered methamphetamine to customers as part of that understanding. As part of the agreement, Defendant also collected funds from the sale of methamphetamine, which in turn were provided to his source of supply, co-defendant Matthew Hines.

b. For example, on January 17, 2019, Defendant's co-conspirator Jake Scrabeck sold approximately 119 actual grams of methamphetamine to law enforcement during a controlled purchase in Rochester, Minnesota. Defendant acknowledges that his co-conspirator Hines, who was also Defendant's source of supply, was Scrabeck's source of supply in January 2019.

c. After conducting ongoing surveillance of Defendant and his co-conspirators during the subsequent weeks, agents determined that co-defendant Aguirre-Rea was co-conspirator Hines' source of supply, and that Aguirre-Rea was delivering methamphetamine from the Twin Cities to Hines in Rochester, Minnesota. On February 9, 2019, agents executed a search warrant for Hines and his home. The search warrant was

executed only hours after Aguirre-Rea dropped off a new amount of methamphetamine for Hines to distribute. In the interim, Hines contacted several of his methamphetamine customers, including named co-defendant Scrabeck as well as Defendant. Shortly thereafter, Defendant arrived at Hines' home to obtain his supply of methamphetamine from Hines, for subsequent distribution.

  d. As agents began the search warrant, Defendant fled from the scene, engaged law enforcement in a high speed vehicle pursuit, and agents abandoned that pursuit in the interest of safety. During the chase three packages of methamphetamine (weighing approximately 471 grams, 473 grams, and 469 grams, respectively) were thrown from Defendant's vehicle. Agents seized these packages shortly thereafter. Defendant acknowledges and stipulates that he possessed and intended to distribute the three packages of methamphetamine before they were thrown from his vehicle on February 9, 2019.

  e. Meanwhile, from co-conspirator Hines' home, agents secured various effects, including but not limited to two amounts of methamphetamine inside a Tupperware (amounts of approximately 233 and 124 grams) along with a scale stashed above a rafter in the basement; and a quantity of methamphetamine (approximately 454 grams) inside a Milwaukee tool bag. The larger amount of methamphetamine was packaged like the packages thrown from Defendant's vehicle.

  f. Defendant admits and agrees that the items seized on January 17, 2019, as well as February 9, 2019, were a part of the ongoing agreement or understanding he had

3

with his named co-defendants and others to distribute methamphetamine in Minnesota. Defendant also agrees that he acted voluntarily and knew his actions violated the law.

3. **Waiver of Pretrial Motions.** Defendant understands and agrees that Defendant has certain rights to make pre-trial motions in this case. As part of this Plea Agreement, and based upon the concessions of the United States within this Plea Agreement, Defendant knowingly, willingly, and voluntarily gives up the right to pursue pre-trial motions in this case. Defendant also understands that by pleading guilty he will waive all rights to a trial or appeal on the question of his guilt.

4. **Statutory Penalties.** The Parties agree that Count 1 of the Superseding Indictment carries statutory penalties of:

   a. a maximum of life imprisonment;

   b. a mandatory minimum of 10 years imprisonment;

   c. a supervised release term of at least 5 years and up to life;

   d. a fine of up to $10,000,000;

   e. a mandatory special assessment of $100;

   f. the assessment to Defendant of the costs of prosecution, imprisonment, and supervision; and

   g. the possible loss of eligibility for federal benefits.

5. **Revocation of Supervised Release.** Defendant understands that if Defendant were to violate any condition of supervised release, Defendant could be

sentenced to an additional term of imprisonment up to the length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583.

6. **Guideline Calculations.** The Parties acknowledge that Defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this Plea Agreement should be construed to limit the Parties from presenting any and all relevant evidence to the Court at sentencing. The Parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guideline calculations:

    a.    Base Offense Level. The Parties agree that pursuant to U.S.S.G. § 2D1.1, the base offense level for the violation noted in Count 1 of the Superseding Indictment is calculated using the greater of the following: (1) the offense level corresponding to the weight of the actual amount of methamphetamine contained in the substances noted in paragraph 2, above (purity), or (2) the Converted Drug Weight, to include both the seized substances noted above as well as amounts attributable to the methamphetamine distribution conspiracy. This information will be available at the time of sentencing.

          Therefore, the Parties agree that the base offense level for the violation and the relevant conduct noted in paragraph 2, above, is at least <u>36</u> (based on an amount of actual methamphetamine of at least 1.5 kilograms but less than 4.5 kilograms) and could be as high as <u>38</u> (if the substances contain at least 90,000 kilograms or more of Converted Drug Weight).

    b.    Specific Offense Characteristics.

          The Parties agree that no specific offense characteristics apply.

    c.    Chapter 3 Adjustments. The Parties agree that other than as provided for in the paragraphs below, no other Chapter 3 adjustments apply.

5

    d.    <u>Reckless Endangerment During Flight</u>. The Parties agree that because Defendant created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, an increase of **two levels** applies. U.S.S.G. § 3C1.2.

    e.    <u>Acceptance of Responsibility.</u> The Government agrees to recommend that Defendant receive a **three-level** reduction for acceptance of responsibility and to make any appropriate motions with the Court. However, Defendant understands and agrees that this recommendation is conditioned upon the following: (i) Defendant testifies truthfully during the change of plea hearing, (ii) Defendant cooperates with the Probation Office in the pre-sentence investigation, and (iii) Defendant commits no further acts inconsistent with acceptance of responsibility. U.S.S.G. § 3E1.1.

    f.    <u>Criminal History Category.</u> Based on information available at this time, the Parties believe that Defendant's **criminal history category is IV**. This **<u>does</u> <u>not</u>** constitute a stipulation, but a belief based on an assessment of the information currently known. Defendant's actual criminal history will be determined by the Court based on the information presented in the Presentence Report and by the Parties at the time of sentencing.

    g.    <u>Guideline Range.</u> The Parties anticipate the following potential low and high Guidelines ranges, based on the relevant conduct noted in paragraph 2 and any other potential adjustments described above:

        i.    <u>235-293 months</u> (Criminal History Category IV & Adjusted Offense Level <u>35</u>, with a base offense level 36, a two-level reckless endangerment enhancement, and three-level reduction for acceptance of responsibility); and

        ii.    <u>292-365 months</u> (Criminal History Category IV & Adjusted Offense Level <u>37</u>, with a base offense level 38, a two-level reckless endangerment enhancement, and three-level reduction for acceptance of responsibility)).

<u>Notwithstanding the potential applicable Guidelines ranges above, Defendant acknowledges that he is subject to a statutory minimum penalty of a ten-year mandatory sentence as to Count 1.</u>

      h.      Fine Range.  Depending on the adjusted offense level, the fine range is as low as $40,000 up to $10,000,000.  (U.S.S.G. § 5E1.2(c)).

      i.      Supervised Release.  The Sentencing Guidelines require a term of supervised release of at least 5 years.

      j.      Sentencing Recommendation and Departures.  The Parties reserve the right to make a motion for departures from the applicable Guidelines and to oppose any such motion made by the opposing party.  The Parties reserve the right to argue for a sentence outside the applicable Guidelines.

7.    **Discretion of the Court.**  The foregoing stipulations are binding on the Parties, but do not bind the Court.  The Parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion.  The Court may make its own determination regarding the applicable guideline factors and the applicable criminal history category.  The Court may also depart from the applicable Guidelines.  If the Court determines that the applicable guideline calculations or Defendant's criminal history category are different from that stated above, the Parties may not withdraw from this Agreement, and Defendant will be sentenced pursuant to the Court's determinations.

8.    **Special Assessments.**  The Guidelines require payment of a special assessment in the amount of $100.00 for each felony count of which Defendant is convicted. U.S.S.G. § 5E1.3.  Defendant understands that this $100.00 special assessment is due and payable at sentencing.

9.    **Waivers of Appeal.**  Defendant understands that 18 U.S.C. § 3742 affords Defendant the right to appeal the sentence imposed in this case.  Acknowledging this right,

and in exchange for the concessions made by the United States in this Plea Agreement, Defendant hereby waives all rights conferred by 18 U.S.C. § 3742 to appeal Defendant's sentence, if the Court imposes a sentence at or below <u>365</u> months' imprisonment. The United States hereby waives all rights conferred by 18 U.S.C. § 3742 to appeal Defendant's sentence, if the Court imposes a sentence at or above <u>120</u> months' imprisonment. In addition, Defendant agrees that the guilty plea pursuant to this Agreement is a final resolution of the issue of guilt. Defendant understands that there will not be a trial of any kind on the issue of guilt and waives the right to appeal any judgment of guilt and conviction in this matter. Defendant has discussed these rights with Defendant's attorney. Defendant understands the rights being waived, and Defendant waives these rights knowingly, intelligently, and voluntarily.

10. **FOIA Requests.** Defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

11. **Forfeiture.** Defendant agrees to forfeit to the United States, pursuant to 21 U.S.C. § 853(a), 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c), all property constituting, or derived from proceeds obtained from the offenses, and all property used, in any manner or part, to commit or to facilitate the commission of the offenses, including but not limited to the items identified in forfeiture allegations in the Superseding Indictment. Defendant agrees that the forfeitures may, at the government's option, be completed through administrative, civil, or criminal forfeiture proceedings. Defendant waives all statutory and

constitutional defenses to said forfeiture, and further consents to the destruction of the firearms and any associated ammunition and accessories. The United States reserves the right to seek the forfeiture of additional property from Defendant.

12. **Complete Agreement.** This, along with any agreement signed by the Parties before entry of plea, is the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, or understandings.

Date: Aug. 2, 2019

ERICA H. MacDONALD
United States Attorney

BY: Allen A. Slaughter Jr.
Assistant U.S. Attorney
Attorney No. 301668

Dated: 8-2-19

MASON PAUL STUHLDREHER
Defendant

Dated: 8/2/19

TOM R. BRAUN, ESQ.
DOMINIQUE J. NAVARRO, ESQ.
Attorney for Defendant