UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 19-CR-104(3)(JNE/TNL)

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | **GOVERNMENT'S INITIAL SENTENCING POSITION PLEADING** |
| MASON PAUL STUHLDREHER, | |
| Defendant. | |

COMES NOW the United States of America, by and through its undersigned attorneys, Erica H. MacDonald, United States Attorney for the District of Minnesota, and Allen A. Slaughter Jr., Assistant United States Attorney, and submits the following position on sentencing.

Mason Paul Stuhldreher (Defendant) pleaded guilty on August 2, 2019, to conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Due to the large volume of drugs attributable to the conspiracy, the parties stipulated in the plea agreement the belief that a base offense level of between 36 and 38 applied, depending upon any purity results. Plea Agreement (Agreement) at ¶ 6; Pre-Sentence Report (PSR) at ¶ 7. Defendant also acknowledged that a reckless endangerment enhancement applied, namely for his flight from law enforcement in a motor vehicle. Agreement at ¶ 6. With an anticipated criminal history of IV, the Agreement detailed possible advisory Guidelines sentencing ranges of between 235 to 293 months and 292 to 365 months imprisonment. *Id*.

The PSR is not consistent with the plea agreement, in that it recommends a guideline range lower than the potential ranges contemplated by the parties under the plea agreement. PSR ¶¶ 111, 112. Specifically, the PSR finds an adjusted offense level of 35 and criminal history category III apply, resulting in an Advisory Guidelines recommended range of 210 to 262 months imprisonment. *See* PSR, ¶¶ 46-56, 75-77, 110. The government submits that a term of 236 months imprisonment – the middle of the applicable guidelines range – is the appropriate prison disposition here, followed by a term of five years supervised release.

## Discussion

The Court must determine what constitutes a reasonable sentence as guided by the factors of Title 18, United States Code, Section 3553(a).  As a first step, the Court must determine the applicable Sentencing Guidelines. Although the Guidelines are advisory, the Court must "remain cognizant of them throughout the sentencing process." Gall v. United States, 552 U.S. 38, 50 n.6 (2007). Indeed, a court may "'rest [its] decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3553(a) and other congressional mandates) in the typical case' if the court finds that the case before it is typical." United States v. Robinson, 516 F.3d 716, 718 (8th Cir. 2008) (quoting Rita v. United States, 551 U.S. 338, 357 (2007)). In addition to considering the Guidelines, Section 3553(a) requires the Court to analyze a number of factors, including the nature and circumstances of the offense, the history and circumstances of the defendant, the need for the sentence to reflect the seriousness of the offense, the need for deterrence, the need to protect the public from further crimes of the defendant, and the need to avoid unwarranted disparities. 18 U.S.C. § 3553(a).

### The Nature and Circumstances of the Offence

The government agrees with the PSR's general description of defendant's criminal acts as part of his drug distribution activities. *See* PSR ¶¶ 21-38. In summary, in early 2018 Rochester Police Department investigators began an investigation into the Hines Drug Trafficking Organization (DTO) – a methamphetamine distribution concern that was plaguing Rochester's streets. After agents unearthed the conspiracy through a combination of investigative tools, they obtained and executed a search warrant at the heart of the conspiracy – namely the home of co-defendant Matthew Hines. PSR ¶ 31. As agents approached to execute the search warrant, they observed Defendant (previously known to be a Hines DTO distributor) enter a white GMC Jimmy, pull out of the driveway, and flee at a high rate of speed. *Id*. During the pursuit, three packages of methamphetamine were thrown from Defendant's vehicle, totaling 1,413 grams of actual methamphetamine. *Id*. Meanwhile agents recovered amounts of methamphetamine from the Hines residence.

Defendant's actions were neither low-level nor small-scale. Instead, he is considered an average participant. PSR ¶ 37. He was a sub-distributor supplied by Hines. *Id*. He is accountable for 1,978.94 grams of methamphetamine (actual) and 357 grams of mixture methamphetamine. *Id*.  He clearly facilitated the Hines DTO – best demonstrated by the fact that on February 9, 2019, Defendant obtained a substantial portion of Hines' methamphetamine, just provided to Hines by his supplier Aguirre-Rea only hours before. Meanwhile, he fled from law enforcement at a high rate of speed, endangering himself, agents and the public generally.

### Defendant's Criminal History

The government does not dispute the PSR's findings, despite the fact that PSR's criminal history categorization of III is less than anticipated in the Agreement. Defendant has an extensive history of driving-related conduct. He also has a history of illicit controlled substance convictions, including felony offenses in 2008 (5th degree possession) and 2014 (1st degree sale). The PSR's analysis and resulting calculus of 7 points (resulting in a criminal history category III) are precisely the clear demonstration of how Defendant is a recidivist offender who has up to now had little regard for court terms of supervision; a person who has been nonplussed by shorter jail terms.[1] The categorization also demonstrates Defendant's propensity to reoffend. For these reasons, while many of Defendant's arguments may apply to general 3553(a) analysis, a downward departure in the first instance is not warranted.

### Defendant's Characteristics

The PSR provides detailed and extensive information regarding Defendant's characteristics. PSR ¶¶ 80-100. The PSR also demonstrates Defendant had multiple opportunities to modify his decision-making; still he chose to once again distribute a controlled substance. Like his co-defendants, Defendant made deliberate choices to facilitate the goals of this DTO. His choices helped Hines's Rochester operations flourish. February 9, 2019, was just a day in the life of the DTO.

---

[1] Defendant committed the controlled substance offense at issue while on court terms of supervision for a preceding controlled substance crime. PSR ¶ 64.

**Recommendation**

With this background, the government respectfully requests a disposition of 236 months imprisonment – the middle of the applicable Guidelines range – because the circumstances of Defendant's offense combined with the remainder § 3553(a) considerations deserve such a term. Defendant was a successful drug dealer who facilitated Matthew Hines's efforts specifically and the Hines DTO generally. He is responsible for an extensive amount of methamphetamine distribution activity, and should be held accountable for the poison he helped foist upon the streets of Rochester, Minnesota. The government also asks the Court to render its final determination in light of all of the factors set forth in 18 U.S.C. § 3553(a) relevant here, including those presented at sentencing and any additional submissions by the parties.

Dated: October 25, 2019                Respectfully,

                                                ERICA H. MacDONALD
                                                United States Attorney

*s/ Allen Slaughter*
BY: ALLEN A. SLAUGHTER JR.
Assistant U.S. Attorney
Attorney ID Number 301668